If it may please the court, I'd like to paraphrase a well-known phrase which may assist the court in framing the issues in terms of this Supremacy Clause case in a way that enables the best analysis of the issues. The general concept is to render to Section 1983 the things that are due to Section 1983 and then to render to the Supremacy Clause the things that are due to the Supremacy Clause. What petitioners contend is that what the State is trying to do in its brief is to apply things or factors that are due or applicable to a Section 1983 case and try to apply those to this Supremacy Clause case. It's respectfully suggested that this attempt should be recognized for what it is and rejected by this court. Second, if you were to ask the petitioners what the things are that should be rendered to Section 1983 which obviously is our position that it's not the case and what are the things that should be rendered to the Supremacy Clause we would say that the court should just start off with a blank page. Essentially draw a line down the middle. On one side, list what appropriately goes in a Section 1983 case. On the other side, what should go in a Supremacy Clause case. Well, in both instances, 1983 will support damages causes of action but that's not what we have here. But it also supports injunctive causes of action which is what we have here and it supports injunctive causes of action premised on the notion that a federal statute requires that the state do or not do something different than what it's doing by virtue of the Supremacy Clause but only in certain instances. So what you have, there certainly is a whole line of cases saying that you can proceed directly under the Supremacy Clause. There just seems to be something of an anomaly because you end up with essentially exactly the same cause of action not going forward in 1983 but going forward directly under the Supremacy Clause. Respectfully, Your Honor, I think our response is that the relief sought by the different claims might be the same but the actual claims or the claims for relief are different. And that might be a common experience for the court. In a 12B6 motion, somebody might be able to knock out a certain claim for relief and another one might sustain the 12B6 motion but yet each claim could also be seeking the same relief. So it is true that Section 1983 claim does include damages and attorney's fees which the Supremacy Clause... Let's leave out the damages and attorney's fees. We know that you can't do that and you're not trying to. Yes, Your Honor. Correct. Yes, Your Honor. So it is true that in both claims, the Section 1983 claim and the Supremacy Clause claim, the plaintiffs could and would be seeking conjunctive relief but that really relates to the relief rather than the theory of liability or actually not even the theory of liability but the theory upon which the party... Is it your position that the difference is that in a 1983 case you need a right on the part of the plaintiff and in a Supremacy Clause case you don't? That's correct, Your Honor. Yes. Now, the district court came up with these supposed categories of limiting the Supremacy Clause cause of action. Is there any case law anywhere supporting that? I didn't see any, Your Honor. I don't know whether there is. I don't have any that supports those different categories. Essentially, on your Supremacy Clause theory, you would need ordinary classic standing but that's all you'd need. Yes, Your Honor. That would be our contention. So let me ask you some questions that are a little different from the fact that it's going on now. There's another lawsuit which was also moved to federal court and has been remanded. What is the status of that? It was brought by the California Medical Association and a bunch of other medical groups. Yes, Your Honor. What's the status of that case? My understanding, second-hand, Your Honor, is that they did seek, I believe, TRO relief. My understanding is that it was denied in the state court. But is there a state court hearing later this month? I thought there was. There might be, Your Honor. I'm unaware of it, if there is. Why was that case remanded? In our case, we were proceeding under federal theory of the Supremacy Clause and the CMA and other entities were filed suit under state causes of action. And federal. I couldn't understand it either, but it was. I gather there's no appeal of that. There can be, so that's going on in state court. Yes, Your Honor. Is there another case? There is another case. My understanding is that it's pending in the Superior Court in Sacramento. Which is brought by cities? I believe it's brought by private entities, but I'm not positive. If Your Honor would like, I'd be very happy to. Well, I'm just curious because it obviously has something to do with the timing and urgency questions and whether somebody else is going to get there first and so on in terms of what we do with this case. That's leading to my next question, which is, if we agreed with you that the district court was wrong on the question of whether there's a cause of action here, what do we do next? Well, I think there's two alternatives to the court. The court could find that they're standing and, I believe, actually issue the injunction, which is what we would ask. Alternatively, I suppose the court could find that they're standing and then remand it back to the district court for further proceedings. Well, this is what bothers me. On what ground would we, if we wanted to grant emergency relief and or the actual preliminary injunction, the second would be unusual, I would think. You've made arguments about irreparable harm, but what arguments have you made or what showing have you made with regard to the likelihood of success on the merits of your supremacy clause theory? I don't see it. I don't see that you've made an assertion, which is that a certain statute would invalidate the 10% cut, but you haven't explored that in any way at all. But I understand also that if the irreparable harm was high, the likelihood of success on the merits wouldn't have to be much, but it would have to be something. And I don't see an argument being made about that. Yes, Your Honor. At least before the district court, Your Honor, and I think it's part of the record in terms of our excerpts, what we've argued is that the statement properly passed a law involving the 10% cut without adequately or – But the statute is a comparative statute, right? It requires that the – if the cause – if the theory exists at all, it's on the grounds that they have to provide rates that would provide – attract providers to the same degree as they're available in the general population, right? Yes, Your Honor. So don't you have to make some kind of a showing about the comparative? Well, I think the information that both parties have submitted indicates the state of California was just concerned with its own budget crisis, which obviously is important, but not a legal factor properly considered in terms of whether the 10% cut is appropriate. Well, you think there's such a showing in the record, and I guess we're going to ask the state if they think there's a showing in the record on the merits that there is a violation. Respectfully, what I would point to is that I think both parties have submitted legislative history from the state of California indicating that the sole consideration was the budget crisis that California now operates under. But that can't be the answer, because suppose it was. You still have to show that the outcome didn't comply with the statute, not their motive. What does the motive have to do with it? Well, for example, we have the declaration of a pharmacist, Shapiro, who indicates that he'll no longer be able to dispense medications to large swaths of Medi-Cal recipients. Is it for the reason set forth in the statute that it's not comparable to what's provided elsewhere? Yes, Your Honor. I believe that would be in the declaration of Shapiro, and then also the declaration of- Well, we can ask the state, and then on rebuttal, if you take some time, if the state disagrees, then you can answer that. One other question. When are the cuts? But what about the payments? Have any been made at the lower rate? I think at this point in time, the payments are not due. I don't have the exact date. My understanding is that it's within a couple of weeks. I could submit that to the court afterwards, but I do believe it's during the month of July. So there's no real injury in remanding to the district court if we determine it's necessary to let them make that determination? Well, in the sense that there would be some time lag in that sense, and based on the declarations of the pharmacists and I think some of the Medi-Cal recipients, at this point in time, because it's an unknown as to whether the 10% cut would actually sustain, there are going to be pharmacists who are not filling prescriptions. I'd like to go back to Judge Brewer's point. You mentioned that you're going on the Supremacy Clause claim, and let's assume for purposes of our discussion that you were successful on that. What specifically are you citing under the Constitution or federal law that you believe preempts the state law? What section are you citing? What code? What provision of the Constitution? Well, that basically the Medicaid statute completes the field, and that a state is not permitted to do something that would violate, for example, Section 30A. Okay, so you're citing 30A of the Medicaid statute? Yes, Your Honor. And so you're saying that the Medicaid statute occupies the field, the state law changes, preempts it, and particularly in this case because you believe that it violates 30A. And what specific language within 30A are you referring to where you believe there is, in fact, a merit claim here? I don't have it right in front of me. I can get that perhaps during the rebuttal. I would be interested in that if you don't mind doing that during the rebuttal, because you've provided declarations from a lot of people in connection with the alleged harm and the standing issue. But like Judge Berzon, I have seen very, very little to take care of the first prong of what we have to satisfy with an injunction, which is that you have a significant chance of being successful on the merits. That's the one that I'm having trouble with and would hope you can provide more. Yes, Your Honor. I will. And let's go ahead. I think probably that's not really within the scope of what we had asked you to argue, but that doesn't mean that you're asking us really to go beyond the question of whether there's a cause of action and standing. Now you're asking us to go to the merits, and if we do go to the merits, then of course you have to answer Judge Smith's question and Judge Berzon's question. All I mean by that, Judge Reinhart, though, is we of course did not ask them to argue the whole merits case, but if he's going to be successful in an injunctive relief situation, he has to at least make a showing that there is a... No question. The only question on that is whether it's here or in the district court. I appreciate that, but before we ever get to the district court, if we're going to give them emergency relief, now we've got to have some showing here. I know the district court would be probably the place to flesh out whether there would be a preliminary injunction, but as I understand it, we're being asked to grant a stay, which of course is a form of injunctive relief where you have the same standard, as I understand it. Absolutely right. I was saying that I don't even think what we asked them to do would reach that. I think what we asked them to do is just talk about the cause of action and the standing, but as I said, it's clearly we can go beyond that and get to the question of a stay where then you would need what Judge Smith said. Let me just put it this way. I think you can tell that all three of us, and certainly Judge Berzon and I have already articulated our perspective that in connection with a stay, I would at least like to know on a facial basis what language you're relying upon that you think conflicts with the California proposed change. Obviously we can't get to the deep aspects of the merits and so on, but at least on a facial basis, where is the likelihood of success on the merits? Yes, sir. I would point the court to page 10 of our brief. There's a reference to 42 U.S.C. section 1396NB4, but if I could just read the language, it's bolded, but it requires providers or practitioners who undertake to provide such services, these are obviously the services under the Medicaid Act, and who meet, accept, and comply with the reimbursement quality and utilization standards under the state plan, which standards shall be, and then we have an ellipsis here, consistent with access, quality, and efficient and economic provisions of covered care and services. So what we would point to, and there are a number of things that talk about access. That is not section 38. That's a different provision. Yes, Your Honor, I'm sorry. But I thought you were doing it in 38. We are, but I believe it can be read together. I thought you were talking about a provision where I must say I wasn't at all focused on this provision, but I was consistent in standing on the cause of action. But I thought there was one that said that they had to provide the same level of services as were provided to others in the community. Yes, Your Honor, and I apologize, Your Honor, I should have started there. That's actually at the top of page 10. That's the one I read before. It says sufficient to enlist enough providers so that care and services are available under the plan, at least to the extent that such care and services are available to the general population in the geographic area. Is that what you're relying on, or are you relying on something else? No, that's what we're relying on, Your Honor. Yes. Thank you. Well, I see that I've used about 16 minutes of my time. I'm wondering, or maybe 17 now, I'm wondering if I might reserve my remaining three minutes for rebuttal. Certainly. Thank you, Your Honor. Good morning, Your Honor. Jennifer Kim on behalf of respondents. Your Honor, I would first start and address the supremacy clause argument, since that's what the parties were asked to brief. When the petitioners bring and ask for the supremacy clause definition, they must, first of all, be able to prove that the state statute that they are seeking at this point is preempted by a federal statute. Other than what counsel mentioned here this morning, every pleading and, in fact, all the arguments at the district court, was alleging that it was Section A30A that preempted AB5. We would put forth, just as Judge Berzon and Judge Smith noticed, that there is nothing in the language of A30A which preempts AB5. I was on tape. But that's the merits of the case, and that's really not where we're starting from here. We're starting from the district court's conclusion that they don't even get to ask that question. They have no cause of action. Your Honor, yes, that's true. We were not contesting standing, either at the district court or now. What the district court did look at was, as the two judges here articulated, was the sliding scale of whether or not petitioners could demonstrate a likelihood of success on the merits versus irreparable harm. And she said the reason they couldn't is because they just couldn't get into court at all on their hearing. And you're not answering that. Your Honor, it wasn't that they couldn't get into court. It was that they couldn't state a claim once they got into court. All right, they couldn't state a claim. But the reason they couldn't state a claim wasn't the merits of their 30A cause of action. It was because she said that they needed to be in one of three categories in relationship to the statute, and I'm wondering where she got that from and how you can sustain that. In the district court's decision on page 8, at the very bottom, the last sentence on page 8, that's where the district court starts and says that the first requirement would be to show that the petitioners here are being required to act in a manner that violates federal law. And then under footnote 7, the district court goes on to cite four different cases, one of which is a U.S. Supreme Court case, Lawrence County v. Ledwood School District. Has any case ever stated that requirement as a basis for bringing a case directly into the Supremacy Court? These are examples of cases that were brought into the Supremacy Court. Not particularly accurate, by the way, but I have seen no case. Every circuit that has addressed the issue, as I have seen it, before and after Doe v. Gonzaga, has said that you can proceed directly into the Supremacy Clause. You don't need 19 – for injunctive action, you don't need 1983. And all you need is plain old standing. Your Honor, it's true. That's all you need to get into court to state a Supremacy Clause cause of action. But just because you're in court… Counsel, are you saying that you do not support the argument of the district court that the plaintiffs could bring this case directly under the Supremacy Clause and have a valid cause of action if there were a violation? No, we agree with the district court's decision, Your Honor. What the respondent is stating… You agree that they cannot bring a claim? Correct. Why? That they cannot state a claim, Your Honor. Not that they don't have standing or a right to state a Supremacy Clause cause of action, but that once petitioners are in court, that they can't state a claim under the Supremacy Clause. You mean they can't because there's no violation? Because there is no federal statute that preempts AB 5 foundationally. They can't even sustain the foundational requirement to allege a Supremacy Clause cause of action. Completely circular. I mean, the district court didn't say that. The district court didn't say that their particular theory doesn't fly. The district court said that they are not the right people to be raising it, essentially. She seemed to leave open the possibility that there might be somebody in the right relationship with the statute to raise it. Just these are the people. True. Just because a petitioner can have standing and come into court to have basically a right to allege a Supremacy Clause of action does not give them carte blanche to just proceed without being able to actually state a cause of action. Why didn't they state one in the court? Because in order to state a claim under the Supremacy Clause, petitioners need to show that the state statute is preempted. They failed to do that. Why did they fail to do it? They failed to do so because J30A under 42 U.S.C. 1396A, which is the only federal statute that they allege preempts AB5, does not in fact preempt AB5. That's hilarious. If that was what the district court decided. The district court decided based on the third prong or the third option that she looked at, which was, in Judge Snyder's opinion, even if, assuming that AB5 is preempted, what petitioners needed to show was that there was an interference with a federally created right. And because this circuit ruled in Sanchez that there was no federally created right under A30A, the district court held that there was no cause of action under this. So the district court did not decide on the basis that you're now arguing. No, they did not. But they assumed, Your Honor, the only way to read the district court decision is that the district court assumed for the sake of argument that there was preemption. Because if AB5 is not preempted by A30A, then the petitioners would have no claim under the Supremacy Clause. I mean, by definition, Supremacy Clause is... So you're arguing on a completely different basis than what the district court decided. Because you're saying the district court decided the contrary of what you're now arguing. She assumed the contrary of what you're now arguing. She assumed there was preemption, but said that these people didn't have a right. You certainly can't see that from the district court's opinion. The district court seemed to have come to an entirely different conclusion than what you seem to be arguing. Your Honor, if you read the district court's opinion starting on the very last sentence of page 8, the first option that the district court lays out is that the federal law preempts state law by requiring the petitioners to act in a manner that violates federal law. She ruled that was not the case. The second option that Judge Snyder laid out was that the federal law preempts state law and, by virtue of the preemption, enjoins or, you know, prevents petitioners from acting in a certain manner. She ruled and found that that was not the case. And, therefore, she found that under the third option, that assuming preemption, that the state law interferes with a federally created right. I think that is the only logical conclusion. But all of those theories have to do with who the particular plaintiffs are. And don't answer the question of whether the—and seem to set out some typology that I've not seen anywhere else limiting the authority to bring a case directly into the Supremacy Clause. And our question to you is, are you supporting that typology and you're supporting that theory or not? Your Honor, I can't say that I don't support the district court's decision because I do believe and respondents do believe that the judge reached a proper outcome. And on appeal, I think that if this court finds any legally reasonable and rational reason to sustain the district court's decision, that it must be sustained. Why do you think that they have not shown that these cuts would result in a violation of the federal statute? Or to put it the other way, why doesn't the federal statute preclude the cuts that are made? The only federal statute that has been alleged and that we have been looking at from the trial court on to today is Section 838. And there's nothing in Section 838 that prevents the state from reducing reimbursement rates. In fact, all of Section 1936A puts authority and the power to set state reimbursement rates to the state. But it does state a bottom line requirement that the rates have to be such that there is – that they are sufficient to enlist enough providers so that care and services are available under the plan, at least to the extent that such care and services are available to the general population in the geographic area. And the allegation here is that this 10% is to be enough, that it was bad enough to begin with, and that this 10% is kicking it over such that at least the pharmacist – and let's just stick to them. I guess there's another suit that involves medical providers. But at least the pharmacists have made a showing here that on a just accounting basis, they're going to be paid less than their cost with this 10% cut, and they ain't going to do it. They're just not – they're getting at it. They're not going to be able to provide pharmaceuticals to Medicare patients, Medi-Cal patients. So why isn't that enough? Well, true, that is the petitioner's allegation. However, if the court were to look at the legislative history for AB-5, it shows that AB-5 is in compliance with 838. The legislative history for AB-5 shows that the legislature, before enacting the 10% reduction, looked at the effect that a 10% reduction would have on access to care. And it considered and weighed the balance between the need for the state to balance the budget and in providing and making available the medical care for the general public. What does the need to balance the budget have to do with it? It may be a harsh statute for the state, but if it's required to do something, what relevance is it that it would have a drastic effect on the state's budget? Your Honor, 838 says that some of the factors that the state can look at in setting reimbursement rates is efficiency, economy, and quality of care. And this court in Sanchez ruled that efficiency and economy have to do with the cost of the state in providing medical treatments and services, making them available to the general public. Well, suppose we, not we, but suppose it was objectively clear that what the state did would drive all pharmacists out of the business. Would it matter that the budget was affected, would it be more efficient, economic? In Sanchez, this court said that it was a balancing of harm and balancing of interest, that there is no bright-line test, there is no formula that we can plug in and come up with an answer. What Sanchez decided was that there was no right under 1983. But it didn't decide that if there was a cause of action as to whether there was actual compliance with the statute by the state rather than whether any individual had a right to services, that there wouldn't be a cause of action. No, it didn't talk about whether or not there would be a right of action for that, but it did go on to explain what the economy, efficiency, and quality of care requirement was. First of all, what is the state of the other? There is another case. Since you're the defendant in all the cases, I assume, what cases are there and what's the state of them? There is one case in the county of Sacramento. It's called Farmacia et al. versus the department. In that case, there was a motion for preliminary injunction and TRO, both of which were denied, I believe, on Friday of last week. There is the other case that was related to this case, and that's California Medical Association et al., which was remanded back to state courts. We have a motion for preliminary injunction set for July 25th. There was a – no, I believe there was no TRO filed in that case. Petitioners in that case asked ex parte for the court to expedite the hearing date on the preliminary injunction, but the court refused to do so. So the Sacramento case was in federal court or state court? State court. It was removed to federal court, but it was remanded back. That's the CMA case, but what about the Sacramento case? Oh, no, that's the Sacramento case as well, Your Honor. I see. Okay, and secondly, if we were to view the district court as having made a much more limited determination than you're suggesting and never having viewed the merits, and therefore not having exercise for discretion with regard to the grant of preliminary injunction, if one assumes that there was a cause of action stated, how would we proceed? Would we proceed – you're essentially asking us to decide the merits of the preliminary injunction question. Is that appropriate? Your Honor, it is appropriate because this court does have the power to do so. But is that true of a preliminary injunction, which is not – we don't have to know for review for a preliminary injunction. So if the district court decides – that would be true in summary judgment, but the district court denied the preliminary injunction on the wrong ground, do we just jump into it and decide on a different ground? Your Honor, this court can sustain the district court's decision if it finds that it's supported by law, even though that support is different than the one relied on by the district court. In the context of a preliminary injunction, do you have law about that? I didn't research that issue, but I can if you would like for me to. Okay, go ahead. All right, is there anything further, counsel? Your Honor, I have nothing further unless you have questions for me. All right, thank you. We'll hear from the petitioner. Yes, Your Honor, thank you so much. While the case is not binding on this court, I think it's instructive. Judge Levy in Clayworth v. Bonta, B-O-N-T-A, addressed just an across-the-board 5% cut. And on page 1128 of that opinion, he does, in our view, a thorough analysis of the Medicaid Act and Medi-Cal. He finds that the 5% across-the-board cut violated Section 30A. And here we have a very similar situation, if not identical, except that the cut is double. Here it's 10%. It's another across-the-board cut of 10%. There's no weighing that was engaged in by the State of California. The 10% cut applies to acne medicine just as well as it would apply to AIDS medicine. There was no weighing by the state. The sole consideration by the state, the statements made by the governor of the state, by the legislature, is that there's a financial crisis and there's an across-the-board 10% cut. The state obviously doesn't have to... Ms. Kim suggested that there was, in fact, some legislative history indicating that there was consideration given to the 30A considerations. Is that true? Nothing comes to mind, Your Honor. I'm not aware of that. California's legislative history is pretty weird anyway because there's no... It's always a question whether there is such a thing. Let's assume for a moment that, just arguendo, that there is a supremacy clause right to proceed here. There is standing. The real issue is whether 30A preempts the field here. At least a determination has to be made specifically with respect that the amount provided would be sufficient, I'm quoting now, to enlist enough providers so that the care and services are available under the plan, at least to an extent that such care and services are available to the general public in the geographic area. If we concluded that, but we didn't feel we had enough to determine whether there was a chance of success on the merits, what would happen if we did not grant a stay, but nonetheless sent it back to the district court with instructions to proceed with its analysis, assuming or being instructed that there was standing and that there is a right under the supremacy clause? I suspect there will be a significant delay because it would have to be hearing before the district court judge and then possibly it would bounce back to the court of appeals. Looking at the record right now, it would seem to me that it might possibly be sufficient with regard to pharmacies, but not with regard to anything else, to demonstrate a modicum of a likelihood of success with regard to the 38 supremacy clause argument. So we might be able to, at least on an emergency basis, say something about pharmacies. I'm having a hard time seeing how we could say anything about anything else. On the other hand, if you went back down, you would have an opportunity to make a record, and we would certainly suggest expedition here, and perhaps have a record that would sustain relief, which I have a hard time seeing now outside of pharmacies. Pharmacies, you may have enough. Yes, Your Honor, and the rest of our suit relates to the pharmacies and then the Medi-Cal recipients who receive the pharmacy services through Medi-Cal. You can't tell that. So you're now telling us that you only want relief with regard to pharmacies? No, Your Honor, but I think our strongest point is, I would agree with Your Honor, the strongest point is through pharmacies. I think we've made it sufficient to just say that the 10% across the board cut violates the supremacy clause. As to what? Because of medical services. First of all, you have no expert or general declarations or anything, except in the most general sense about other kinds of medical services, and your individual plaintiffs essentially say it's been terrible for a long time, and I'm afraid it's going to get worse, and that's about it. Well, they have their firsthand experience of difficulty in finding specialists. I understand it, but I don't understand how it shows irreparable harm, even, with regard to the 10% cut, because it shows that things are already terrible. I understand Your Honor's point, but I suppose if you keep digging, the hole gets deeper. I understand that, but I'm simply saying that it seems to me that you have an obligation to your clients to make a better record than what you've made so far outside the pharmacy area, and I don't know why you wouldn't want to take that by going back to the district court and doing it. Did you ever request for TRO to go straight to the preliminary? We went straight to the preliminary. How long did it take you to get a ruling on the preliminary? Well, we filed it, I believe it was heard about three weeks later, and then the judge was very quick with her order.  So if it went back to a point where the judge realized that she could get to the merits of the preliminary, and you say you don't think there are any payments due for a few weeks, it would seem to me you would be in a position to develop whatever you need and seek the preliminary without getting all tangled up in procedure again. Yes, Ron, although the concern is, and I think the declarations bear out, that effective July 1st there are pharmacists that are declining to fill prescriptions because they could sustain significant loss. So the harm essentially started July 1st because people are not getting their needed medicines. But you're not asking for a limited pharmacy, or are you? I'd like to know the answer to that question. Well, I believe we asked for the general relief, that the 10% across-the-board cut violates the Supremacy Clause. All right, are there any other questions? No. All right, thank you, counsel. Thank you very much. You're stand submitted. Thank you.
judges: Reinhardt, Berzon, Smith